STITZER et al. v. UNITED STATES, to Use of VAUGHAN.

(Circuit Court of Appeals, Third Circuit. November 22, 1910.)

No. 1,405.

1. LIMITATION OF ACTIONS (§ 182*)—AVAILABILITY OF DEFENSE—NECESSITY OF PLEADING—WAIVER.

Failure to plead the statute of limitations constitutes a waiver thereof.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 678, 680; Dec. Dig. § 182.*]

2. UNITED STATES (§ 67*)—CONTRACTOR'S BOND—RIGHT TO SUE—TIME—STATUTES.

Act Feb. 24, 1905, c. 778, 33 Stat. 811 (U. S. Comp. St. Supp. 1909, p. 948), amending Act Aug. 13, 1894, c. 280, 28 Stat. 278 (U. S. Comp. St. 1901, p. 2523), provides that a contractor with the United States for any public work shall execute a bond to pay all persons supplying labor and materials for the work, and that, in case of suit thereon by the United States, any creditor having a claim for labor or materials may intervene therein and have his claim adjudicated and paid, subject to the priority of the claim and judgment of the United States, and in case no suit is brought by the United States within six months from the completion and final settlement of the contract, any such creditor may sue on the bond in the name of the United States for the benefit of himself and all other similar creditors, provided that such suit shall not be commenced until after complete performance and final settlement of the contract, and shall be commenced within one year after such performance and final settlement, and not later. *Held*, that such act, in so far as it prohibited the bringing of an action by a subcontractor prior to the expiration of six months from the completion and final settlement of the contract, was not a statute of limitations, but that during such period no right of action accrued to the subcontractor; the right to sue during that time being vested exclusively in the United States.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 50; Dec. Dig. § 67.*]

3. PLEADING (§ 382*)—CONTRACTOR'S BOND—ACTION—ASSUMPSIT—DEFENSES.

In assumpsit on a federal contractor's bond by a subcontractor, the objection that the suit was prematurely brought was available under a plea of non assumpsit.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1280–1294; Dec. Dig. § 382.*]

4. ASSUMPSIT, ACTION OF (§ 23*)—DEFENSES—PREMATURE SUIT—PLEADING—WAIVER.

Defendants in assumpsit on a contractor's bond, not being required, under a plea of non assumpsit, to plead that the suit was prematurely brought in order to render such objection available, their failure to plead such defense did not constitute a waiver thereof.

[Ed. Note.—For other cases, see Assumpsit, Action of, Cent. Dig. § 139; Dec. Dig. § 23.*]

5. UNITED STATES (§ 67*)—CONTRACTOR'S BOND—ACTION—ACCRUAL—PREMATURE SUIT—WAIVER.

Act Feb. 24, 1905, c. 778, 33 Stat. 811 (U. S. Comp. St. Supp. 1909, p. 948), amending Act Aug. 13, 1894, c. 280, 28 Stat. 278 (U. S. Comp. St. 1901, p. 2523), provides that, in case no suit is brought by the United States on a contractor's bond within six months from the completion and final settlement of the contract, any creditor for whose benefit the bond has been taken may sue thereon in the name of the United States for the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

182 F.—33

benefit of himself and all similar creditors, provided that the suit shall not be commenced until after the complete performance of the contract and final settlement thereof, and that it shall be commenced within a year after such performance and final settlement, and not later. *Held,* that the nonaccrual of the cause of action in favor of a subcontractor until six months after final completion and settlement was jurisdictional, and that the provision could not be waived by the parties.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 50; Dec. Dig. § 67.*]

6. UNITED STATES (§ 67*)—PUBLIC IMPROVEMENTS—CONTRACTOR'S BOND—ACTION—ACCRUAL—"COMPLETION AND SETTLEMENT."

Act Feb. 24, 1905, c. 778, 33 Stat. 811 (U. S. Comp. St. Supp. 1909, p. 948), amending Act Aug. 13, 1894, c. 280, 28 Stat. 278 (U. S. Comp. St. 1901, p. 2523), provides that, if no suit is brought on a federal contractor's bond by the United States within six months from the completion and final settlement of the contract, any included creditor may sue, provided such suit shall not be commenced until after the complete performance of the contract and final settlement thereof and shall be commenced within one year after such final settlement and performance and not later. *Held,* that the words "completion and final settlement," as used in such provision, were not equivalent, though the latter may by inference be held to include the former, but that both constitute an essential prerequisite to a subcontractor's right to sue, and hence where a contract was still open and unsettled as late as July 12, 1909, a suit on the contractor's bond, begun October 21st following, was premature and unsustainable.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 50; Dec. Dig. § 67.*

For other definitions, see Words and Phrases, vol. 2, pp. 1366–1368.]

In Error to Circuit Court of the United States for the Eastern District of Pennsylvania.

Action by the United States, to the use of William F. Vaughan, against James Herbert Stitzer and the Title Guaranty & Surety Company. Judgment for the use plaintiff (179 Fed. 567), and defendants bring error. Reversed.

Joseph P. Gaffney, John W. Graham, Jr., and Simpson & Brown, for plaintiffs in error.

Clarence S. Eastwick, for defendant in error.

Before BUFFINGTON and LANNING, Circuit Judges, and CROSS, District Judge.

CROSS, District Judge. The suit below was instituted in the name of the United States, to the use of William F. Vaughan, against James Herbert Stitzer and the Title Guaranty & Surety Company, to recover upon a bond given under the act of Congress approved August 13, 1894 (chapter 280, 28 Stat. 278 [U. S. Comp. St. 1901, p. 2523]), as amended by an act approved February 24, 1905 (chapter 778, 33 Stat. 811 [U. S. Comp. St. Supp. 1909, p. 948]).

On September 19, 1908, Stitzer entered into a written contract with the United States to do certain work at Ft. Mifflin, Pa. On the same day Stitzer, as principal, and the Title Guaranty & Surety Company, as surety, executed and delivered to the United States, pursuant to the above-mentioned act, a joint and several bond in the penal sum of $738, conditioned that Stitzer should perform the work mentioned in his said

contract, and should "promptly make full payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in the aforesaid contract." On September 29, 1908, Stitzer, by a written contract between him and William F. Vaughan, the use plaintiff, subcontracted to Vaughan the carpenter work mentioned in Stitzer's contract with the United States. The work under Stitzer's contract was completed March 25, 1909, and the United States settled with him on July 20th of that year. Stitzer having failed to pay Vaughan, he on October 21st next ensuing instituted suit in the court below to recover the amount of his claim upon the bond above mentioned. The question involved herein is whether a person who has supplied labor and materials to a contractor with the United States has the right to bring an independent action on the bond given under the act of Congress above referred to, before the expiration of six months from the completion and final settlement of the contract. The trial judge submitted the questions of fact involved in the case to the jury, who returned a verdict for the plaintiff, reserving, however, the defendant's request to charge that under all the evidence the verdict must be for the defendants. Subsequently the defendants moved for judgment non obstante veredicto. This motion, after argument, was denied, and a judgment entered upon the verdict for the sum of $624.22. The statute in question, so far as pertinent, is as follows:

"That hereafter any person or persons entering into a formal contract with the United States for the construction of any public building, or the prosecution and completion of any public work, or for repairs upon any public building or public work, shall be required, before commencing such work, to execute the usual penal bond, with good and sufficient sureties, with the additional obligation that such contractor or contractors shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract; and any person, company or corporation who has furnished labor or materials used in the construction or repair of any public building or public work, and payment for which has not been made, shall have the right to intervene and be made a party to any action instituted by the United States on the bond of the contractor, and to have their rights and claims adjudicated in such action and judgment rendered thereon, subject, however, to the priority of the claim and judgment of the United States. If the full amount of the liability of the surety on said bond is sufficient to pay the full amount of said claims and demands, then, after paying the full amount due the United States, the remainder shall be distributed pro rata among said intervenors. If no suit should be brought by the United States within six months from the completion and final settlement of said contract, then the person or persons supplying the contractor with labor and materials shall, upon application therefor, and furnishing affidavit to the Department under the direction of which said work has been prosecuted that labor or materials for the prosecution of such work has been supplied by him or them, and payment for which has not been made, be furnished with a certified copy of said contract and bond, upon which he or they shall have a right of action, and shall be, and are, hereby authorized to bring suit in the name of the United States in the circuit court of the United States in the district in which said contract was to be performed and executed, irrespective of the amount in controversy in such suit, and not elsewhere, for his or their use and benefit, against said contractor and his sureties, and to prosecute the same to final judgment and execution; provided, that where suit is instituted by any of such creditors on the bond of the contractor, it shall not be commenced until after the complete performance of said contract and final settlement thereof, and shall be commenced within one year after the performance and final settlement of said contract, and not later; and provided further, that where suit is so instituted by a creditor or by creditors, only one action shall

be brought and any creditor may file his claim in such action and be made party thereto within one year from the completion of the work under said contract, and not later."

The learned judge below, in his opinion in denying the motion for judgment non obstante veredicto, said:

"And for the purpose of this case it may also be assumed—but without deciding the point—that an independent action by the subcontractor should have been deferred until six months had elapsed from July 20th, the date of final settlement. But it still remains to inquire whether the defendants are in a position to take advantage of this defect in procedure, and in my opinion their objection should not be allowed to prevail. The defendants are setting up what is essentially a statute of limitation. It differs only from the ordinary. statutes in the unessential particular that by it a time is fixed before which suit may not be brought, while by· their provisions a time is fixed after which such action may not be entertained. But it is well settled that the defendant cannot take advantage of a statute of limitations unless in some way it is formally set up as a defense."

In this we think he erred. He treated the statute in question as a statute of limitation and concluded that, because it had not been pleaded, it had been waived. He cites authorities to show, what is undoubtedly the law, that a failure to plead such a statute constitutes a waiver thereof, but none to show that a statute, like the one in question, is, in any sense, a statute of limitation, or one which like that statute must be pleaded. To call the statute in question a limitation is not only a misnomer, but an absolute misconception of the purpose of the act, which was to give any person or persons, supplying labor and materials to a contractor with the government, a right of action, where before none existed. The act·was not intended to, and does not, bar any cause of action, but rather creates one. The lapse of six months was a condition precedent to the plaintiff's right to sue. In other words, a conditional cause of action only was conferred. Such cause of action was created by the statute and must be instituted pursuant to the terms and conditions of the statute, and not otherwise. No party prior to the expiration of six months from the conpletion and final settlement of a. contract, except the United States, was thereby authorized to sue upon the bond. Whether during that period the United States does or does not institute a suit is a matter of entire indifference, in so far as the proper construction of the statute is concerned. It is sufficient for our purpose to say that during that period, and all of it, the only right of action on a bond given under that statute is vested exclusively in the United States.

The statute has received substantially the same construction that we have given it, in the following cases: United States v. Winkler (C. C.) 162 Fed. 397, Title Guaranty & Trust Co. v. Puget Sound Engine Works, 163 Fed. 169; 89 C. C. A. 618, and United States v. McGee et al. (C. C.) 171 Fed. 209.

Nor does the proviso of the act modify, as claimed, the six months' clause. They can be construed in perfect harmony. Thus, the first clause says in effect that a suit like the present one shall not be instituted until six months after the completion and final settlement of the contract, and the proviso says, that it must be commenced within one year thereafter. Hence it follows that such a suit must be insti-

tuted during the six months intervening between the prohibited period and the expiration of one year after the completion and final settlement of the contract. This construction seems so natural and obvious as not to require any argument to demonstrate it, while any other construction would clearly nullify important provisions of the act.

The form of action below was assumpsit, and among the pleas pleaded thereto was that of non assumpsit, and the case was tried upon that plea only. Under such a plea an objection that the suit is prematurely brought is always available. If a suit were instituted upon a promissory note prior to its maturity, and the defense of non assumpsit were interposed, there can be no question that thereunder the immaturity of the note at the time the suit was instituted could be shown. The further claim is made, however, that, by not pleading the statute, and by going to trial upon the merits, the objection that the suit was prematurely brought was waived. Of course, if the defendants were not required to plead the statute, as we conclude they were not, no waiver would arise out of the fact that it was not pleaded. But, aside from that, we think it was not a case where a waiver could be inferred. The act does not intend that persons may collusively maintain an action thereunder within the six months' period exclusively reserved for that purpose to the United States. Such conduct would be in derogation not only of the rights of the United States, but of the act itself. It cannot be that creditors either by collusion or waiver can thwart the purpose of the act. The case might be different were there no other interested party. Moreover, it should be borne in mind that during that period the plaintiff had no cause of action, and there was consequently nothing upon which the defendants' waiver, if any, could act; the defendants could waive a right of their own, but could not, contrary to the express terms of the statute, by waiver confer a right of action on the plaintiff, especially where such waiver would infringe the rights of a third party. Further consideration of this point is, however, deemed unnecessary, in view of the fact that there was no waiver, because the defendants interposed an appropriate plea which was both ample and sufficient to require the plaintiff to establish the fact that his suit was not prematurely brought. This he did not do, but, on the contrary, by his own evidence, conclusively established, as we shall show, that his suit was improvidently and prematurely commenced.

In one of the government's vouchers to Stitzer, dated May 5, 1909, the following statement appears: "Work completed March 25, 1909." Stitzer however, returned the voucher to the government May 7, 1909, accompanied by a letter in which he said, in substance, that there was more due him than the government had allowed, but that he nevertheless returned the voucher "so as to expedite the payment of part of the moneys due me." It then appears that his account was referred from one government official to another, until June 19, 1909, on which date Stitzer again wrote the government inspector complaining that he had not received "his last estimate or final payment." Later the following letter appears in the record:

"Navy Department, Washington, July 12, 1909.

"Sir: The Department is advised that your contract of September 19, 1908, for repairs to magazine buildings at Fort Mifflin was completed March 25, nine-

teen days after the date (March 6) by which performance was required. After consideration of communications from you regarding the matter and reports from the inspector at the magazine, the Department finds that this delay was not beyond your control within the meaning of the contract and that accordingly you are chargeable with liquidated damages at the stipulated rate during the period thereof. As the completion of repairs to but one.of the three buildings affected by the contract was delayed, such damages at the rate prescribed in paragraph 12 of the specifications amount to $18.68. It may be added that the actual damages suffered by the government on account of the delay are reported to be somewhat in excess of this sum.

"The contract provides for the execution by the contractor of a release of claims as a condition to final settlement. A form of release is inclosed, upon the return of which duly executed, final payment in the sum of $607.68 will be authorized. This release executed by you under date of May 24 is not acceptable in that it recites the receipt in final payment of $626.36, which sum includes the amount accruing to the government as liquidated damages.

"Very respectfully,   Beekman Winthrop, Acting Secretary.

"Mr. Jas. Herbert Stitzer, Jr.,
  "No. 1201 Chestnut Street,
   "Philadelphia, Pa.
 "[Enclosure.]"

On July 20th the Acting Secretary of the Navy Department sent to Stitzer a letter and check for $607.68 in final payment of the contract, which letter and check he testified were received by him about July 22d. He commenced his suit October 21, 1909. To justify its commencement at that time, it should have appeared affirmatively in the case that the contract was completed and final settlement thereof made as early as April 21st of that year. Several other communications between government officials and Mr. Stitzer have not been referred to, from which, but more particularly from those above adverted to, it appears that there were matters in difference between Stitzer and the government officials in connection with his contract which were open and unsettled certainly as late as July 12, 1909. This being so, it is needless to inquire whether such disputed matters were ever actually settled prior to July 22, 1909, when Stitzer received a check from the government in final payment for his work. If we were to accept the government's statement that the work was completed March 25, 1909, as meeting the requirements of the statute, it would follow that the suit was timely instituted. But this cannot be done; the language of the act prohibits the commencement of a suit by a creditor, not only as the plaintiff contends, until six months from the completion of the contract, but until six months "from the completion and final settlement of the contract." These terms are not equivalent. They do not mean the same thing. The latter may perhaps by inference be held to include the former, but the former cannot by any fair construction be made to include the latter. Each is an essential prerequisite to the institution of a creditor's suit. The contract might well be completed, and yet divers disputes and differences exist between the parties, which would require adjustment before final settlement could be made, as in the case at bar.

Under the circumstances we conclude that the suit was prematurely instituted. Judgment therefor should have been entered for the defendants non obstante veredicto.

The judgment below is reversed, with costs.