UNITED STATES of America for the Benefit and Use of WESTINGHOUSE ELECTRIC SUPPLY COMPANY, a corporation duly organized by law and having an usual place of business in Boston, Suffolk County,

v.

David A. ROBBINS, of Brookline, Norfolk County, d/b/a D. A. Robbins Electric Co., and Dale Construction Co., a corporation duly organized by law and having an usual place of business in Newton, Middlesex County, and Phoenix Indemnity Company, a corporation duly organized by law and having an usual place of business in Boston, Suffolk County.

Civ. A. No. 53–829.

United States District Court
D. Massachusetts.

Oct. 20, 1954.

Wasserman & Salter, Boston, Mass., Bernard P. Rome, Boston, Mass., for plaintiff.

Edward H. Applestein, Cambridge, Mass., for defendant Robbins and Dale.

W. Lloyd Allen and Arthur J. Martin, Boston, Mass., for defendant Phoenix Indem. Co.

FORD, District Judge.

This is an action under the Miller Act, 40 U.S.C.A. § 270a et seq., to recover the price of certain materials allegedly furnished by the use plaintiff, Westinghouse Electric Supply Company (hereinafter called Westinghouse), for use in connection with work done at the Watertown Arsenal under a contract No. DA–19–066–Ord–1431 between the United States and defendant Dale Construction Co. (hereinafter called Dale). It is alleged that these materials were used, consumed and incorporated into the work done in connection with the execution of this contract. Defendant Phoenix Indemnity Company is surety for Dale Construction Co. on its labor and materials bond.

Defendant David A. Robbins, doing business as D. A. Robbins Electric Co., was the subcontractor for the electrical work to be done under Dale's Watertown Arsenal contract. The materials supplied by Westinghouse were ordered by Robbins, and delivered to Robbins at the Arsenal. Payment was made, except for the balance involved in this action. The correctness of the amount still owing to Westinghouse, $923.54, is admitted, as well as the liability of Robbins. The issue here is whether Westinghouse can recover as against the prime contractor, Dale, and its surety.

It is admitted that no written notice in accordance with 40 U.S.C.A. § 270b (a) was given by Westinghouse to Dale. Westinghouse contends that Robbins and Dale were so related that they should be treated as being substantially the same business entity, or, alternatively, that Robbins in his dealings with Westinghouse was not acting as principal but as agent of Dale, an undisclosed principal.

In 1951 and 1952, the period involved here, Robbins was a master electrician carrying on an electrical contracting business as an individual. Dale Construction Co. was a Massachusetts corporation engaged in general construction work. Robbins was treasurer of Dale and he and his wife directors of Dale. Between them they owned about half the stock of Dale. There were three other stockholders and directors who owned the remaining shares. Dale and Robbins had separate places of business. Separate books were kept, Robbin's by his wife, and Dale's by an accountant hired for that purpose. It appears that Robbins did the electrical work under many Dale contracts, but not under all of them, and that he also did other electrical work besides that on Dale's projects.

In the present case there was no formal written contract between Dale and Robbins. Inquiry was made of other electrical contractors as to their price for doing the electrical work under the Watertown Arsenal contract. Their prices were higher than the figure for which Robbins was willing to do the job. Robbins discussed the matter with the other directors and shareholders of Dale and it was agreed that Robbins was to do the work on a cost plus basis for an amount not to exceed the upset price of $31,000. Robbins then hired electricians and ordered materials in his own name. As the work progressed he billed Dale for the exact cost of labor and materials as it was incurred, and Dale paid the suppliers directly for their materials. Before the completion of these payments and before Robbins claimed anything from Dale for overhead or profit, Dale became involved in financial difficulties in connection with other contracts and could make no more payments.

Plaintiff contends that the same employees were used by both Dale and Robbins, thus indicating that there was no real distinction between them. The evidence for this was rather vague. An engineer from the Arsenal said he had seen the same men performing both electrical and non-electrical work, installing the fibre conduit and also pouring concrete. This was denied by Robbins, and it seems improbable either that the union electricians employed by Robbins would have done laborer's work or would have allowed laborers to work with them in performing electrical work. In any case, the only individual specifically

 

named as having done both types of work was Robbins himself, who admittedly had a part in both businesses.

On the evidence it must be found that Robbins and Dale were in fact two distinct business entities. In the present case there was a real and valid, even though informal, contract by which Robbins became the subcontractor for the electrical work to be performed under Dale's contract with the United States. Robbins in his dealings with Westinghouse was acting in his own behalf as principal and not as an agent of Dale. Westinghouse thus had no contractual relationship, directly or indirectly, with Dale.

Where there is no contractual relationship between plaintiff and the prime contractor, the statute, 40 U.S.C.A. 270b (a), makes the giving of written notice of the claim to the prime contractor a condition precedent to plaintiff's action on the bond. United States for Use and Benefit of American Radiator & Standard Sanitary Corp. v. Northwestern Engineering Co., 8 Cir., 122 F. 2d 600, 603; United States for the Use and Benefit of John A. Denie's Sons Co. v. Bass, 6 Cir., 111 F.2d 965; United States for Use of Bruce Co., Inc. v. Fraser Const. Co., Inc., D.C., 87 F.Supp. 1, 4. The case relied upon by plaintiff, Fleisher Engineering & Construction Co. v. United States, 311 U.S. 15, 61 S.Ct. 81, 85 L.Ed. 12, goes no farther than to hold that where written notice is given, the statutory formalities such as the use of registered mail will not be insisted upon. United States ex rel. Hargis v. Maryland Casualty Co., D.C., 64 F.Supp. 522, rests upon the finding that there was a direct contractual relationship between the prime contractor and the plaintiff. In this case there was admittedly no written notice to Dale and the statutory condition precedent not having been complied with, plaintiff's action must fail.

There is a further reason why plaintiff cannot recover here. Plaintiff has shown only that the materials for which it seeks payment were delivered to Robbins at the Watertown Arsenal,

and that similar materials were used in the electrical installations made there under the contract. There was no direct evidence that the materials so used were those delivered by Westinghouse. During the period in question Robbins maintained at the site of the work being done at the Arsenal a stockpile of materials for all the projects in which he was then engaged. The materials received from Westinghouse went into this stockpile as well as similar items purchased from other suppliers. There was no evidence of any record to show which material was actually used in the Arsenal installation and which was used on work under other contracts. Robbins testified that he cannot now say which material was used on any particular job. Plaintiff has consequently failed to sustain the burden of showing that the materials for which it seeks payment were incorporated into the work done at the Watertown Arsenal under Dale's contract with the government.

Judgment for plaintiff as against defendant Robbins. Judgment for defendants Dale Construction Co., and Phoenix Indemnity Co. No costs.